IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLEMING COMPANIES, INC., | ) | Bk. No. 03-10945(MFW) |
| | ) | Jointly Administered |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CAVENDISH FARMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. No. 03-56207(MFW) |
| | ) | |
| v. | ) | Civ. No. 03-1049-SLR |
| | ) | |
| FLEMING COMPANIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| J.R. SIMPLOT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04-54600(MFW) |
| | ) | |
| v. | ) | Civ. No. 04-1284-SLR |
| | ) | |
| FLEMING COMPANIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Richard H. Cross, Jr., Esquire of Cross & Simon, LLC, Wilmington, Delaware.  Michael J. Keaton, Esquire of Keaton & Associates, P.C., Palatine, Illinois.  Counsel for Plaintiffs Cavendish Farms, Inc. and Heinz Frozen Foods.

Laura Davis Jones, Esquire and Scotta E. McFarland, Esquire of
Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C.,
Wilmington, Delaware.  Eric C. Liebeler, Esquire and Christopher
T. Casamassima, Esquire of Kirkland and Ellis, LLP of Los
Angeles, California.    Counsel for Defendant Fleming Companies,
Inc.

**MEMORANDUM OPINION**

Dated:  September 14, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

Pending before the court are various motions for summary judgment filed by the parties to the above captioned adversary proceedings.   The court has jurisdiction to resolve these motions pursuant to 28 U.S.C. § 1334(a).   For the reasons that follow, the court concludes that the products at issue fall within the protection of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, et seq., as fresh and frozen fruits and vegetables.   7 C.F.R. § 46.2(u)(2004).

## II.    BACKGROUND

Defendant Fleming Companies, Inc. and various of its affiliates and subsidiaries ("Fleming") are food, grocery and general merchandise wholesalers and distributors that bought and sold processed food products in interstate commerce.   On April 1, 2003, Fleming initiated bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code.[1]

Plaintiffs[2] are independent corporations, each of which sold wholesale quantities of various food products to Fleming.

---

[1]The Post Confirmation Trust of the Fleming Companies, Inc. bankruptcy estates ("PCT") is a trust created pursuant to the debtors' third and revised joint plan of reorganization and the post-confirmation trust agreement dated August 19, 2004.   The PCT is responsible for and has the power to administer certain of Fleming's post-confirmation responsibilities under the Plan, including the litigation of these proceedings.

[2]The moving plaintiffs include Cavendish Farms ("Cavendish"), Heinz Frozen Food Company, Inc. ("Heinz"), and J.R. Simplot Company ("Simplot").

Plaintiffs filed adversary complaints in bankruptcy court
alleging violations of PACA. More specifically, under PACA, a
trust is maintained "for the benefit of all unpaid suppliers or
sellers" of agricultural commodities. 7 U.S.C. § 499e(c)(2).
Unpaid suppliers who qualify under PACA are given an interest in
the buyer that is superior to any other lien or secured creditor.
In the context of a bankruptcy proceeding, the effect of PACA is
to give PACA claimants priority over other creditors, a status
plaintiffs seek.

PACA's application is limited to "perishable agricultural
commodit[ies]," defined as fresh fruits or vegetables "of every
kind and character." 7 U.S.C. § 499a. Congress vested
regulatory authority under PACA with the United States Department
of Agriculture ("the Department"). 7 U.S.C. § 499o. The
Department has expanded upon Congress's definition of "perishable
agricultural commodity" in its regulations, stating in relevant
part:

> Fresh fruits and fresh vegetables include all
> produce in fresh form generally considered as
> perishable fruits and vegetables, whether or not
> packed in ice or held in common or cold storage,
> but does not include those perishable fruits
> and vegetables which have been manufactured into
> articles of food of a different kind or character.
> **The effects of the following operations shall not
> be considered as changing a commodity into a
> food of a different kind or character:** Water,
> steam, or oil blanching, battering, coating,
> chopping, color adding, curing, cutting, dicing,
> drying for the removal of surface moisture;
> fumigating, gassing, heating for insect control,

2

> ripening and coloring; removal of seed, pits,
> stems, calyx, husk, pods rind, skin, peel, et
> cetera; polishing, precooling, refrigerating,
> shredding, slicing, trimming, washing with or
> without chemicals; waxing, adding of sugar or
> other sweetening agents; adding ascorbic acid or
> other agents to retard oxidation; mixing of
> several kinds of sliced, chopped, or diced
> fruit or vegetables for packaging in any type
> of containers; or comparable methods of preparation.

7 C.F.R. § 46.2(u)(2004)("the Rule")(emphasis added). At issue
are three operations identified in the Rule: Water blanching,
oil blanching, and coating and battering.

Under the original PACA legislation, "blanching" was an
allowed operation. See 24 Fed. Reg. 9147 (November 10, 1959).
In 1963, the term "blanching" was changed to "water or steam
blanching," "to clarify the regulations on the basis of
experience in administering the act." 28 Fed. Reg. 3266 (April
4, 1963), made a final rule, 28 Fed. Reg. 7067 (July 11, 1963).
In July 1994, the Department proposed extending PACA coverage to
include "fresh and frozen fruits and vegetables that are oil-
blanched, including frozen french fried potato products." 59
Fed. Reg. 35487 (July 12, 1994). In support of the proposed
rule, the Department explained:

> As indicated in documents submitted to this Agency
> by the Frozen Potato Products Institute, frozen
> potato products represent the largest single
> frozen commodity shipped in the United States.
> These documents further state that potatoes cannot
> be economically frozen and shipped long distances
> unless they first undergo oil blanching. To
> exclude such a substantial portion of the frozen
> food industry is inconsistent with the intent of

3

> the PACA to protect dealers in fresh or frozen
> fruits and vegetables.

Id. The proposed rule became final on March 27, 1996, after an

extended comment period. In addition to the reasoning initially

advanced to support the amendment, the Department included the

following explanatory information:

> As pointed out by the American Frozen Food
> Institute, oil blanching, like water and steam
> blanching, inactivates enzymes without cooking the
> product. Water and steam blanched frozen fruits
> and vegetables are covered under the current
> regulations, oil-blanched frozen fruits and
> vegetables are not. To exclude such a substantial
> portion of the frozen food industry is inconsistent
> with the intent of the PACA to protect dealers in
> fresh or frozen fruits and vegetables.

*****

> Oil-blanched product is well within the definition
> of a perishable agricultural commodity as defined
> by the statute and is consistent with the industry
> view of the scope of the Act and the nature of the
> product. Including oil-blanched frozen fruits and
> vegetables does not unduly or disproportionately
> burden retailers. With this final rule, all sales
> of potato products, whether to wholesale distributors
> or retailers, would be covered by the term "perishable
> agricultural commodity.". . .

*****

> The comments in favor of the proposal claimed that
> frozen potatoes cannot be shipped practically and
> commercially without being oil-blanched and that
> extending PACA to cover these products would
> protect processors and shippers and enhance the
> protection to farmers. They also pointed out that
> incorporating oil-blanched products into the
> regulations was consistent with the current policy
> of including water-blanched and steam-blanched
> product and would streamline the administration of
> PACA because it would no longer be necessary to

4

> distinguish oil-blanched from water or steam-blanched
> products.

61 Fed. Reg. 13385 (March 27, 1996).

     The inclusion of "battering" and "coating" as "operations"
that did not change a commodity into a "food of a different kind
or character" was accomplished by amendment to the Rule proposed
by the Department in 2002 after a large food service distributor
filed for bankruptcy and refused to pay numerous PACA trust
claims involving battered and coated potato products.  See 67
Fed. Reg. 77,002 (Dec. 16, 2002).  The Department heard from the
Frozen Potato Products Institute, whose members

> coat or batter their potato products to preserve
> their color and crispness while under heat lamps
> after cooking.  The operation involves dipping
> strips into a mixture of water and natural vegetable
> starch (e.g., potato or rice).  Subsequently, a
> crisping agent such as dextrin and/or a chemical
> leavening agent are added to the product.  The
> product is then air blown to remove all but a thin
> layer of coating, oil-blanched, and then finally
> frozen.
>
> Coated or battered products are in great demand by
> fast food restaurants and consumers because the
> operation preserves the color and crispness of
> potatoes held under heat lamps, a common practice
> in fast food restaurants, although it does not
> alter the taste or texture of the product.

Id.  The Department's Agricultural Marketing Service concluded in
this regard that

> coating or battering does not alter the essential
> character of the potato products because the
> operation leaves them virtually indistinguishable
> in appearance and texture from those that have
> not been coated or battered.  The operation . . .

5

is directly analogous to those described in 7 C.F.R.
46.2(u) that may be performed on a perishable
agricultural commodity without changing the commodity
into a food of a different kind or character.  In
addition, the use of starches in the operation likely
has less of an impact on the texture or essential
character of the potato than other processes already
expressly accepted in 7 CFR 46.2(u), such as chopping,
oil blanching, and adding sugar or other sweetening
agents.

Id.  The rule was adopted without substantive opposition, in

response to the frozen food industry's request that the

Department "codify its opinion that the coating and battering of

fruits and vegetables is an operation that does not change a

perishable agricultural commodity into a food of a different kind

or character."  Id.

## III.   STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party bears the burden of proving that no

genuine issue of material fact exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

"Facts that could alter the outcome are 'material,' and disputes

are 'genuine' if evidence exists from which a rational person

could conclude that the position of the person with the burden of

proof on the disputed issue is correct."  Horowitz v. Fed. Kemper

6

Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## IV. ANALYSIS

The question before the court is whether the steps used to prepare the products at issue convert these products to something outside the scope of PACA's protection. Plaintiffs argue that, because the rule's definition of "perishable agricultural commodity" expressly covers every step plaintiffs employ in processing their products, *ipso facto*, such products cannot be converted into the prohibited "food of a different kind or character." (Civ. No. 03-1049, D.I. 103 at 5) Plaintiffs maintain that if the court were to accept Fleming's analysis, the

7

court would subvert the very purpose of the Rule, that is, the court would be considering the effects of the allowed operations as changing the products into foods of a different kind or character.

Fleming maintains that the Rule "is invalid as applied to"[3] the products at issue.[4]   (Civ. No. 03-1049, D.I. 109 at 2-3) Fleming argues that, regardless of how the processes are labeled by plaintiffs, the products at issue are not in fact "fresh" or "perishable," as those terms should be interpreted under the Rule.

Fleming bases its argument on the opinion of Ed O'Neill, an individual who has spent 34 years in retail and food service product development.   Mr. O'Neill describes himself as a "food scientist experienced in the creation of food products that are marketable as being of a different kind and character."[5]   (Civ.

---

[3]The validity of the amendment has been upheld upon challenge by Fleming. Fleming Companies, Inc. v. USDA, 322 F. Supp. 2d 744 (E.D. Tex. 2004), aff'd, 2006 WL 237854 (5th Cir. Feb. 1, 2006).   Given the admission by Fleming that it did not mount a facial challenge to the battered and coated amendment in the litigation at bar, and given the decision of the Fifth Circuit, the court declines to address the issue further and, instead, will proceed to address the amendment's application to the products at issue.   (See Civ. No. 03-1049, D.I. 109 at 2-3)

[4]Although plaintiffs claim PACA coverage for non-potato products, the papers generally focus on potato products.   The court assumes that the arguments made are equally applicable to both potato and non-potato products.

[5]Mr. O'Neill has a masters of science degree in food science and nutrition (1971) and a bachelors of science degree in food

8

No. 03-1049, D. I. 109, ex. G at 3)  In making his determination
as to what products are "fresh" and what products have been
changed into a food "of a different kind or character," Mr.
O'Neill employs his own definition of "fresh" which includes
evaluation of the following factors:[6]  (1) flavor; (2) texture;
(3) chemical composition, including nutritional profiles; (4)
ingredients; (5) appearance; (6) manufacturing process
characteristics; and (7) finished product functionality.  (Id.)
Mr. O'Neill specifically analyzes, with the above factors in
mind, the effects of the three operations in dispute:  (1)
battering and coating; (2) oil blanching (referred to as "par-
frying" by Mr. O'Neill); and (3) water blanching.  According to
Mr. O'Neill, the battering and coating step "frequently
introduce[s] many non-potato products into the french fry . . .;"
the "oil blanching" step is really a "cooking step" to "set the
batter and improve the product's flavor and texture . . .;" and,

_____

science and technology (1969).

[6]"Fresh as used for the purposes of my investigation denote
the following characteristics:
•  In a condition representative of sound and wholesome
freshly harvested product.  This would be determined by the
[seven] factors listed [above]. . . .
•  Consumed close in time to the harvest or production of
the product.
•  Has not been subject to preservation technologies
designed to allow prolonged storage of products, i.e., such as
preserved, canned, pickled, smoked or frozen."

(Civ. No. 03-1049, D.I. 109, ex. G at 4)

with respect to the "water blanching" step, "the times and temperatures are often well in excess of the minimum required to inactivate enzymes." (Civ. No. 03-1049, D.I. 109, ex. G at 5-7) Mr. O'Neill concludes that these operations change the products at issue into articles of food that are not fresh because, *inter alia*: (1) With respect to flavor, "[t]he act of frying creates its own flavors;" (2) With respect to texture, "[f]rying changes texture;" (3) With respect to chemical composition, "[f]rying has a significant and irreversible effect on the composition of the product;" (4) With respect to ingredients, "[n]umerous ingredients are added that would not be associated with the raw product;" (5) With respect to appearance, "[f]rying results in the development of the golden brown colors associated with many of the products included in this litigation;" (6) With respect to manufacturing process characteristics, "[p]rocesses used to produce the products in question are very extensive;" and (7) With respect to finished product functionality, "[t]he end user sees products with different functional characteristics such as yield, hot hold time, and breakage. These characteristics are the essence of why customers are willing to pay more, because they are different and do provide significant advantages over their fresh counterparts." (<u>Id.</u> at 9)[7]

_____

[7]In opposition to Mr. O'Neill's opinion is that of Charles P. Berry, Ph.D., an expert retained by defendant Simplot. Dr. Berry has his doctorate degree in cereal chemistry and has been

10

The linchpin of Mr. O'Neill's analysis is that plaintiffs'
blanching operations, both by water and oil, actually cook the
products, as opposed to simply inhibiting the enzymatic action
that causes the products to be perishable.  Fleming urges the
court to go beyond the plain language of the statute and require
investigation into the actual physical and chemical properties of
each product to determine if the operations have actually started
the "cooking" process, thus removing the product from PACA's
protection for "fresh" or "perishable" commodities.

The court declines to embrace Fleming's position.  The first
rule of statutory construction is to determine if the language is
ambiguous and, if not, the court is to enforce the statute
according to its terms.  Abdul-Akbar v. McKelvie, 239 F.3d 307,
313 (3d Cir. 2001)("If the language of a statute is plain, the
sole function of the court is to enforce the statute according to
its terms.").  In interpreting the operative statutory language
at bar, "fresh fruits and fresh vegetables of every kind and
character," the statute expressly empowers the Department to

associated with the food industry for 35 years.  Dr. Berry
essentially opines that, because the operations discussed by Mr.
O'Neill have been found by the Department not to change the
character of the products at issue, Mr. O'Neill is incorrect in
his contrary conclusions.  (Civ. No. 03-1049, D.I. 109, ex. K)
Plaintiffs have also submitted the affidavits of employees who
have averred that "with the entire frozen potato industry, water
blanching and oil blanching is done for the least amount of time
possible to inactive enzymes," with the end products still "raw
and perishable."  (Civ. No. 03-1049, D.I. 124, ex. B)

11

"make such rules, regulations, and orders as may be necessary to carry out the provisions of" PACA. 7 U.S.C. § 499o.     The Department, through the Rule, directs that the "effects of [certain] operations shall not be considered as changing a commodity into a food of a different kind or character." In selecting the exempted operations, the Department sought comments from those affected by the Rule and, in enacting the various amendments to the Rule, clearly relied on the relevant industries' understanding of the words used to describe the permitted operations.   There is no mention in any of the administrative history of the Rule of a need for testing every product to determine whether the results of a permitted operation take the product outside the protected scope of PACA.   Indeed, the Department was specifically interested in extending the protection of PACA to all frozen potato products and in eliminating the necessity of distinguishing between, e.g., oil-blanched and water or steam-blanched products or between products that are coated and battered and those that are not.   Clearly, the kind of examination proposed by Fleming is inconsistent with both the letter and spirit of the law as written and administered by the Department.[8]   Therefore, in the absence of evidence that

---

[8]Although Mr. O'Neill's reasoning might be persuasive if written on a blank slate, the legislation at issue does not in any way contemplate the kind of inquiry undertaken by Mr. O'Neill.   Indeed, Fleming has had the opportunity to incorporate its reasoning into the Rule during the comment periods for each

12

plaintiffs' products are processed in a way inconsistent with the industry standards incorporated into the Rule, the products at issue are protected by PACA.

## V.   CONCLUSION

For the reasons stated, plaintiffs' motions for summary judgment are granted, and defendant's motions for summary judgments are denied.  An order shall issue.

---

of the disputed amendments.  The court declines Fleming's attempt to do so now, in the context of litigation.